## W. L. MOODY & CO. v. WARD TEMPLEMAN, ASSIGNEE.

### Decided April 9, 1900.

1. **Assignment for Creditors—Acceptance—Garnishment.**

Where a general assignment for the benefit of creditors has been made, and a creditor of the assignor has garnished a debt due by virtue of the assignment to the assignee, such creditor's acceptance under the assignment, reserving the right to pursue the garnishment, and made for the residue of his debt after the amount garnished shall have been applied to its satisfaction, may be rejected by the assignee, who has the right to require an unconditional acceptance.

2. **Same—Acceptance After Four Months Too Late.**

A creditor's notification to the assignee of his acceptance under a general assignment for the benefit of creditors, given after the expiration of the four months within which the statute requires that such acceptance shall be made known, comes too late, where the assignee had already declared a partial dividend among the accepting

creditors, and the reason for the delay in such acceptance was that the creditor, after the assignment, had resorted to a garnishment which put in question the right and title of the assignee to the garnished fund. Rev. Stats., art. 75.

APPEAL from Grimes.   Tried below before Hon. J. M. SMITHER.

*Lovejoy, Sampson & Malevinsky* and *W. W. Meachum,* for appellants.

*Neal, King & Boone,* for appellees.

GILL, ASSOCIATE JUSTICE.—This suit was instituted by appellants, W. L. Moody & Co., on August 13, 1898, against appellee, Ward Templeman, and the sureties on his bond as assignee of J. T. and T. A. Cook, for the purpose of compelling the assignee to approve certain claims of appellants against the assigned estate and permit them to share in the benefits of the assignment.

Appellee answered, among other things, that appellants had not accepted the assignment and filed their claims within the time and in the manner prescribed by law.

Upon this issue the cause was tried before the court without a jury, and resulted in a judgment for the appellee, from which appellants have perfected this appeal.   The controversy arose upon the following state of facts:

J. T. and T. A. Cook were the owners of a private bank in Navasota, Grimes County, Texas, and conducted it under the firm name of "E. F. Baxter."

They became sureties for one S. M. Cook on two promissory notes to Moody & Co., each for the sum of $1500, payable at Galveston, with 10 per cent interest after maturity and 10 per cent attorney's fees in case of suit thereon.   One R. R. Anderson was also a party payor to these notes.

On the 22d day of November, 1897, J. T. and T. A. Cook made a statutory assignment, naming appellee, Ward Templeman, as assignee. This was made for the benefit of all creditors who should, under the terms of the statute, accept their proportionate share of the assigned estate and discharge the debtors.   Templeman accepted the trust on November 25, 1897, and duly qualified, giving bond with R. B. Templeman, W. J. Foster, and J. R. Baldridge as sureties   On December 7, 1897, the assignee duly published a notice of the assignment, the publication being made in a newspaper of Grimes County, the county in which the assignment was made and in which the assigned estate was principally situated.   The notice was published in three successive issues of the paper, the last notice appearing in the issue of the 21st of December, 1897.

The assignors were indebted in the sum of about $59,000   Their assets amounted to $104,000 in apparent values.   Within the time required by law, creditors holding claims to the amount of $47,249 accepted under said assignment and filed their claims with the assignee.

Appellants, Moody & Co., were not directly notified of the assignment, but the facts support the conclusion of the trial court that they had actual knowledge of it on the day of its execution.

On the 22d day of November, 1897, Moody & Co. filed suit on the two notes above mentioned. This suit was brought in the District Court of Galveston County, and at the same time appellants garnished the firm of Sealy, Hutchings & Co. for the purpose of subjecting to the payment of the notes any sum which the assignors might have on deposit with the last named firm.

Assignors had on deposit with said firm about $6000, to which the assignee was entitled by virtue of the assignment. At the suggestion of Sealy, Hutchings & Co. the assignee was made a party to this garnishment proceedings, which pended until the —— day of December, 1898, when it was voluntarily dismissed by Moody & Co. at their own cost, and the money thus released from the garnishment lien was turned over to the assignee to be administered with the remainder of the assigned estate.

R. R. Anderson, who was also bound on the notes above mentioned, was indebted to assignors in the sum of $10,000, and executed a deed of trust in which the assignors were named as preferred creditors for the amount due them. This deed of trust was attacked by Moody & Co. on the ground of fraud. The attack was unsuccessful, and the assignee subsequently realized between $1500 and $2000 out of the Anderson claim. We do not think this incident has any bearing on the rights of the parties to this suit, and will therefore give it no further notice.

Prior to February 15, 1898, Moody & Co. took judgment in their suit on the notes, and on the last named date their attorneys mailed to the assignee the following letter, which was received in due course of mail:

"Mr. Ward Templeman, Navasota, Texas:

"Dear Sir.—We beg to advise you that we have taken judgment for W. L. Moody & Co. on their notes against J. T., T. A., and S. M. Cook. The proceeds in the hands of Hutchins, Sealy & Co., belonging to the Cooks, upon which we ran our garnishment, will be insufficient to satisfy our judgment; and our clients, W. L. Moody & Co., desire to participate in the assignment and accept of its security for the residue of their debt remaining unpaid. We are informed by them that you have ignored the letters which they have written you heretofore, and this is to give you notice of their acceptance under said assignment to the extent above named; and also to advise you that they will bring suit against you to enforce their rights unless you recognize the same. Kindly let us hear from you at once in reference to this matter, and oblige."

On March 19, 1898, the assignee received from Moody & Co. the following letter:

"Ward Templeman, Assignee of the E. F. Baxter Bank, Navasota,
Texas:

"Dear Sir.—We consent to the assignment made to you of the E.
F. Baxter Bank for the benefit of creditors of said bank, reserving our
right as creditors of R. R. Anderson to contest the validity of the
deed of trust executed by R. R. Anderson for the benefit of said bank;
and also reserving our right to exhaust all secureties held by us. Yours
very truly,

"W. L. MOODY & CO."

On May 16, 1898, Moody & Co., through their agent Lawson, presented
to the assignee the Moody & Co. judgment, including interest, attor-
ney's fees, and costs. It was proved up in proper form as a claim against
the assigned estate. The assignee refused to entertain it.

On May 30, 1898, Moody & Co. forwarded to the assignee by registered
letter their proved claim and formal acceptance under the assignment,
which the assignee also refused to allow. The assignee's refusal to
permit Moody & Co., to participate in the assigned estate was based
on their failure to accept under the assignment within the time and in
the manner required by the statute.

On May 10, 1898, the assignee declared a dividend of 40 per cent and
distributed it among the accepting creditors.

While this statement of facts is deemed sufficient for the purposes
of this opinion, we adopt the findings of the trial court as set out in
the record.

If either the letter written the assignee by the appellants' attorneys
or the letter written him by appellants themselves amounted to an ac-
ceptance of the assignment as required by law, the judgment of the trial
court is erroneous, unless it be held that the action of appellants in
pressing the garnishment proceeding was so inconsistent with any pur-
pose on their part to take under the assignment as to nullify their ac-
ceptance and preclude them from sharing in the trust estate. We will
consider first the question of acceptance.

Article 75 of the Revised Statutes provides that the "creditors of the
assignor consenting to such assignment shall make known to the as-
signee their consent in writing within four months after the publication
of the notice  *  *  *  and no creditor not assenting shall receive or
take any benefit under the assignment  *  *  *."

In Sanborn v. Norton, 59 Texas, 308, it is held that while the assignee
may waive the formal written consent and act upon assent made known
to him in some other way, yet in the absence of such waiver no dividend
can accrue to a creditor unless he brings his claim strictly within the
provisions of the statute.

It is held further in the same case that the statute requiring the as-
sent of creditors desiring to take under the deed has several objects in
view. "One is to enable the assignee to know within a definite period
how many and what creditors will accept under the assignment. An-

other is to furnish him and the creditor with such evidence of consent as can not be disputed    *    *    *."

It may be added that another evident purpose of the statute is to promptly place in the hands of the assignee such data as he must necessarily have in order to the speedy and economical settlement of the affairs of the estate. We think it logically follows that the trustee should have the right to require to be filed with him an unconditional and unambiguous acceptance. So it has been held that one having a claim secured by collateral may not delay the affairs of the estate by withholding his acceptance until his securities are exhausted, but must signify his assent and file his claim within the time specified, the assignee to estimate the value of his securities and allow the claim for the balance. Lovenberg v. Bank, 67 Texas, 440.

It will be observed that the first letter addressed to the assignee, and which it is contended by appellants was a sufficient assent, indicates that they still relied on the garnishment proceeding then pending and undisposed of, and were then in the inconsistent attitude of attempting to satisfy their claim, in part out of property to which the assignee was clearly entitled, notwithstanding their garnishment, and as to the remainder to share in the trust estate to the further detriment of the accepting creditors. If appellants had any securities which they might rightly hold, the reservation of their right to exhaust them, as appears in the second letter to the assignee, would not invalidate their acceptance as to any balance remaining unpaid. See Kaufman v. Hudson, 65 Texas, 716.

But it appears that the right sought to be reserved was the right to pursue the garnishment proceeding, and it will not be gravely contended that the assignee was bound to proceed upon an acceptance containing such a condition. One of the causes of the assignee's refusal was the pendency of the garnishment, which then and until December of that year had the effect to withhold from his control a large sum of money which should have been promptly turned over to him.

It is held in Missouri that a creditor can not claim the benefits of a statutory assignment after attaching property in the hands of the assignee. Valentine v. Decker, 43 Mo., 583.

We are cited to cases in other jurisdictions in which a different rule appears to prevail, it being held that the creditor can not be debarred from attacking the assignment for fraud, and if such an attack fails and the assignment is permitted to stand, the attacking creditor may share with the others in the distribution. See Mills v. Parkhurst, 126 N. Y., 89.

We are constrained to believe that the assignment laws of the States in which such a rule prevails are radically different from ours. Here, if the purpose of the assignor is to make a statutory assignment, the law cures all defects. Revised Statutes, article 77, provides that no fraud either on the part of the assignor or assignee shall have the effect to defeat the assignment. Article 81 provides that it shall not be void

for failure to file inventory, etc., and provides a procedure for the discovery of goods or property concealed or withheld.

It is thus seen that the law does not permit the debtor to fail in his purpose, and all grounds for the avoidance of the assignment are expressly taken away.

We must hold therefore that the assignee correctly refused to act upon an acceptance which in effect reserved the right to maintain the garnishment proceedings, and since neither of the letters amounted to an unconditional acceptance, the appellants are precluded by the plain terms of the statute from sharing in the trust estate.

It is contended, however, that the acceptance which accompanied the proof of the claim presented to the assignee in May, 1898, is not subject to any valid objection. While this may be true as to its form and substance, it was filed too late. Not only had four months, the time prescribed in the statute, elapsed, but the assignee, acting on acceptances and proved claims already filed, had declared a dividend and made distribution.

We are aware that when good excuse is shown for the delay a creditor may accept after the expiration of the time, but the doctrine announced in Lovenberg v. Bank, supra, to the effect that a creditor will not be heard to excuse his delay on the ground that he was awaiting the result of a suit to avoid the assignment, applies with peculiar force to the facts of this case. In this State a creditor, by accepting under a statutory assignment providing for the discharge of the debtor, thereby becomes bound to execute the discharge, and may not thereafter question the validity of the deed. Robinson v. Townes, 76 Texas, 535. But he is not bound to accept, nor is his acceptance presumed in the absence of some affirmative act on his part. If the claim is scheduled as a liability, the assignee may proceed upon the assumption of acceptance, and if the creditor receives his share he is bound. The creditor, however, may ignore the assignment and proceed against the debtor, relying upon the debtor's future acquisitions for the collection of his claim, and inasmuch as this is true, we are unable to see why the doctrine of election should not apply so as to absolutely preclude a creditor who attacks the assignment. Whether, however, the act of appellants in garnishing the trust funds would alone have the effect to preclude them, we do not decide. They failed to signify their acceptance in time, and the trial court correctly adjudged them not entitled to share in the assigned estate.

Finding no error in the record the judgment is affirmed.

*Affirmed.*