### STANDARD VARNISH WORKS v. HAYDOCK.

(Circuit Court of Appeals, Sixth Circuit.   February 24, 1906.)

#### No. 1,435.

BANKRUPTCY—FRAUDULENT PURCHASE OF GOODS BY BANKRUPT—ELECTION BY SELLER.

 One from whom a bankrupt obtained goods by means of fraudulent representations, which were not paid for, has his election to confirm the sale and assume the position of a creditor for the price, or to repudiate the sale and recover the goods, but, having made such election, with knowledge of the facts, by proving his claim and voting as a creditor in the bankruptcy proceedings, he is concluded thereby, and cannot thereafter withdraw his claim and recover the goods.

Appeal from the District Court of the United States for the Southern District of Ohio.

Frank Seinsheimer and Roettinger & Gorman, for appellant.

Cobb, Howard & Bailey and Van Deman, Burkhardt & Shea, for appellee.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge.   The Decatur Buggy Company, an Ohio corporation, on April 9, 1904, made a general assignment for the benefit of its creditors.   On the 19th of that month a petition of some of its creditors was filed in the court below, praying that the company be adjudicated a bankrupt; and on May 11th following it was, upon the hearing of said petition, so adjudged.   The Standard Varnish Works, the appellant here, filed and proved a claim as a general creditor against the bankrupt for goods sold to it for the purpose of its business, and upon the footing of such a creditor participated in the proceedings at the creditors' meeting and voted at the election of the trustee, which, as we infer from the referee's report, occurred on May 31, 1904.   Subsequently this appellant moved for leave to withdraw its claim, and the motion was allowed on June 17, 1904. Thereafter, on the same day, the appellant filed an intervening petition setting forth that the goods, the same goods on account of which it had filed and proved its claim as a creditor, had been purchased from it by the bankrupt upon false representations as to its

financial condition upon which the appellant relied in making the sale, and which representations were known by the bankrupt to be false at the time of the sale. And it was further alleged in said intervening petition that the bankrupt, at the time of said sale, had no intention of paying for the goods, or reasonable expectation of paying for them. Whereupon the petitioner averred that it was entitled to the possession of the goods, and prayed that the trustee be ordered to return those of them still in his possession, and that a claim for the balance be allowed against the estate. This petition was disallowed by the referee, who found that the facts regarding the sale were as claimed by the petitioner, but held that the petitioner was precluded from recovering the goods by proving its claim in the proceedings at the creditors' meeting and voting as a creditor. The district judge, upon revision of the order of the referee, confirmed the same, and the order of the District Court thereon is brought here by appeal.

As the referee properly said in his opinion, it was open to the petitioner, the purchase having been procured by fraud, to elect whether to confirm the sale notwithstanding, and maintain the position of a creditor for the price, or to repudiate the sale and recover the goods. But the vendor must make his election promptly on discovery of the fraud. This is the settled law. Upon this principle Judge Ray held, in Re Hildebrant (D. C.) 120 Fed. 992, that a vendor could not affirm the contract of sale as to part of the goods, and claim the price and disaffirm as to another part, and recover the goods in specie. And see Seavey v. Potter, 121 Mass. 297. And having made his election in such circumstances, the vendor makes it once for all. Kennedy v. Thorp, 51 N. Y. 174; Moller v. Tuska, 87 N. Y. 166; Heller v. Elliott, 44 N. J. Law, 467; Carter v. Smith, 23 Wis. 497. The petition did not state when the petitioner became aware of the falsity of the bankrupt's representations of its solvency and of its fraudulent purpose, or whether it was before or after the petitioner proved its claim and participated in the proceedings as a creditor. And if, as it has in some cases been held, the burden of proof that the election was made with knowledge of the facts is upon the party who urges the estoppel, it would be difficult to resist the conviction that the circumstances attending the assignment and the adjudication of bankruptcy were sufficient to have shown the petitioner that the bankrupt in procuring the goods had made false representations in regard to its solvency. Not only did the petition make no claim that the petitioner was ignorant at the time of proving its claim of the facts in regard to the representations of the bankrupt and of its intention in making the purchase, but the facts stated by the referee are sufficient, prima facie, to support the conclusion that the petitioner had knowledge of the essential facts when it voted for the trustee. In these circumstances, the election of the petitioner to prove its claim as a general creditor was final. There is good ground for saying that it was too late for the exercise of an election after the petitioner had joined the general creditors in shaping and carrying forward the bankruptcy proceedings and influencing their associates in their action. The suggestion that the proceedings probably would have been

the same without the petitioner's co-operation cannot avail. The assumption of the position of a general creditor toward the assets would naturally be a strong inducement to the other creditors in pursuing the bankruptcy proceedings, for this would imply a sharing of the assets, and this result would be defeated if their associates were permitted to turn about and reclaim the assets in specie. But, if that can be permitted in any state of facts, it is clear that there is no equity in this case to countervail the legal and logical result of such an election.

The order of the District Court must be affirmed, with costs.